Filed 12/19/13  Legardy v. San Antonio Community Hosp. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| TANJA LEGARDY, et al., | |
| Plaintiffs and Appellants, | E052950 |
| v. | (Super.Ct.No. CIVRS803538) |
| SAN ANTONIO COMMUNITY HOSPITAL, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  David A. Williams, Judge.  Affirmed.

Diane B. Weissburg for Plaintiffs and Appellants.

Davis, Grass, Goldstein, Housouer, Finlay & Brigham, Jeffery W. Grass and Carol A. Hoehn, for Defendant and Respondent.

Plaintiffs and appellants Tanja Legardy and Sean Legardi, Sr., initiated this personal injury action against San Antonio Community Hospital (SAC Hospital) following Mrs. Legardy's fall during a visit.  Following a jury trial, judgment was entered

1

in favor of SAC Hospital. Plaintiffs appeal, contending misconduct on the part of the trial judge warrants reversal of the judgment. We reject their claims and affirm.

## I. PROCEDURAL BACKGROUND AND FACTS

On April 13, 2006, Mrs. Legardy fell during a visit to SAC Hospital. As a result, plaintiffs initiated this action on April 8, 2008, alleging claims for negligence and premises liability. A jury trial commenced with opening statements on November 30, 2010. A special verdict in favor of SAC Hospital was rendered on December 16, 2010. Plaintiffs appeal.

## II. DISCUSSION

As SAC Hospital aptly notes, "in reading the Opening Brief, it is generally difficult to determine the basis of appeal for any particular issue." For the most part, it appears that plaintiffs' primary claim is that the trial judge committed numerous instances of misconduct that denied plaintiffs their right to a fair trial. Our review of the record will focus on the various acts of misconduct pointed out by plaintiffs.

A court must avoid even an appearance of unfairness pervading the record. The California Supreme Court stated in an early pronouncement: "The trial of a case should not only be fair in fact, but it should also appear to be fair. And where the contrary appears, it shocks the judicial instinct to allow the judgment to stand." (*Pratt v. Pratt* (1903) 141 Cal. 247, 252.) More recently courts have agreed that "In conducting trials, judges "'should be exceedingly discreet in what they say and do . . . lest they seem to lean toward or lend their influence to one side or the other." [Citation.]' [Citation.] Their conduct must ""'accord with recognized principles of judicial decorum consistent

with the presentation of a case in an atmosphere of fairness and impartiality."'"'" [Citation.] "'"The trial of a case should not only be fair in fact, . . . it should also appear to be fair."'" [Citation.]" (*Haluck v. Ricoh Electronics, Inc.* (2007) 151 Cal.App.4th 994, 1002.)

On the other hand, a judge may form an opinion based on the evidence: "When a judge's state of mind appears to be adverse to one of the parties but is based on actual observance of the witnesses and the evidence, that circumstance does not amount to prejudice disqualifying the judge from trying the action. The judge's duty is to consider and pass on the evidence and, when that evidence is in conflict, to resolve the conflict. The opinion that the judge thus forms does not amount to improper bias and prejudice." (7 Witkin, Cal. Procedure (5th ed. 2008) Trial, § 245, p. 298, and cases cited therein.)

## A. Judicial Disparaging and Discourteous Remarks

Plaintiffs fault the trial court saying, "'You know, I don't care.'" They claim that from this comment, we can presume prejudice. In a related argument, plaintiffs assert that the trial court made so many disparaging comments ("no less than twelve (12)") that it is clear "he 'favored' the defense over the plaintiffs." No specific conduct is identified; however, plaintiffs reference a hearing held on November 3, 2009, more than one year prior to commencement of trial. The November 3 hearing addressed plaintiffs' ex parte application to continue the trial and re-open discovery. Over SAC Hospital's objection, the trial court granted all relief requested by plaintiffs, continuing the trial to May 10, 2010. Given the outcome of the hearing, we are at a loss as to how the cited record references demonstrate judicial prejudice.

3

**B. Court Failed to Enforce Its Order that SAC Hospital Produce Evidence**

Plaintiffs contend that 11 days prior to the initial trial date of November 9, 2009, SAC Hospital produced evidence that it intended to use at trial; however, the evidence had not previously been produced for plaintiffs.  Plaintiffs moved to exclude the evidence, or, in the alternative, continue the trial and reopen discovery.  The trial court granted the alternative.  Plaintiffs cite the discussion between the court and counsel; however, as SAC Hospital notes, it is unclear how the court's decision to continue the trial and reopen discovery constituted judicial misconduct.   Regarding the specific evidence that was allegedly hidden by SAC Hospital, plaintiffs fail to support this claim via citation to the record identifying the late-produced evidence.  We conclude the trial court did not commit any act of misconduct in ordering the trial continued and discovery re-opened.

**C. SAC Hospital's Request to Depose a Witness**

Citing the discussion from the May 6, 2010, hearing on plaintiffs' motion to quash a deposition subpoena, plaintiffs fault the trial court for granting defense's request.  According to the record, plaintiffs had identified Dr. Landouer as a witness.  SAC Hospital scheduled the doctor's deposition on two separate occasions; however, on the last occasion the doctor refused to proceed without his personal attorney present.  Recognizing that defense counsel had exerted reasonable efforts to schedule the deposition, the trial court denied plaintiffs' motion to quash.  The court informed the parties that because there were no courtrooms available, the trial that was scheduled to

begin on May 10, 2010, would have to be continued to July 19, 2010. We discern no judicial misconduct at the hearing on the motion to quash.

**D. SAC Hospital's Motion to Continue the Trial and Motions in Limine Filed Prior to the May and July Trial Dates**

Plaintiffs assert the trial court was biased in favor of SAC Hospital because (1) it granted defense counsel's request on July 8 and July 15, 2010, to continue the trial based on unavailability of counsel, and (2) it failed to summarily deny SAC Hospital's motions in limine as untimely, having been filed in violation of the Superior Court of San Bernardino County, Local Rules, rules 411 and 415.[1]

Regarding plaintiffs' claim involving SAC Hospital's motions in limine, they reference the discussion between the court and counsel on May 6, 2010, and July 8, 2010; however, they offer no legal authority to support their claim. "'Appellate briefs must provide argument and legal authority for the positions taken. "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived."' [Citation.] 'We are not bound to develop appellants' arguments for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.' [Citations.]" (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*).)

Notwithstanding the absence of a legal argument, the trial court did not err in refusing to summarily deny the defense motions in limine as untimely. "A motion in

---

[1] In this opinion, the term "local rule" shall refer to the Superior Court of San Bernardino County Local Rules unless otherwise indicated.

5

limine is made to exclude evidence before it is offered at trial on the ground that the evidence is either irrelevant or subject to discretionary exclusion as unduly prejudicial. [Citations.]" (*Ceja v. Department of Transportation* (2011) 201 Cal.App.4th 1475, 1480-1481.) By its very nature, such motion is brought at the threshold of trial (or even during trial) to "'avoid the obviously futile attempt to "unring the bell"'" when prejudicial evidence is offered and then stricken. (*People v. Morris* (1991) 53 Cal.3d 152, 188, overruled on other grounds in *People v. Stansbury* (1995) 9 Cal.4th 824, 830, fn. 1.) The use of motions in limine promotes trial advocacy and management. (*People v. Morris*, *supra*, at p. 188.) While local rule 411 provides that "[a]ll motions in limine shall have been submitted in writing with service completed at least 8 days before the [trial readiness] conference," and local rule 415 sets forth the contents of the declaration that must accompany the motion in limine,[2] the trial court is vested with the authority to

_____

[2] "(a) Motions made for the purpose of precluding the mention or display of inadmissible and prejudicial matter in the presence of the jury shall be accompanied by a declaration that includes the following:

"(1) A clear identification of the specific matter alleged to be inadmissible and prejudicial;

"(2) A representation to the court that the subject of the motion has been discussed with opposing counsel, and that opposing counsel has either indicated that such matter will be mentioned or displayed in the presence of the jury before it is admitted in evidence or that counsel has refused to stipulate that such matter will not be mentioned or displayed in the presence of the jury unless and until it is admitted in evidence;

"(3) A statement of the specific prejudice that will be suffered by the moving party if the motion is not granted; and

"(4) If the motion seeks to make binding an answer given in response to discovery, the declaration must set forth the question and the answer and state why the use of the answer for impeachment will not adequately protect the moving party against prejudice in the event that evidence inconsistent with the answer is offered." (Local Rules, rule 415(a)(1), (2), (3) & (4).)

6

determine how to manage trials in its courtroom and may "defer ruling upon a motion in limine." (Local Rules, rule 415(d).) (See Superior Court of California, County of San Bernardino, Local Rules of Court (eff. July 1, 2013) <http://www.sb-court.org/Portals /0/Documents/PDF/Forms%20and%20Rules/rulesofcourt.pdf> [as of October 1, 2013].) When plaintiffs' counsel objected to SAC Hospital's motions in limine as not complying with the court's local rules, the court overruled the objection. It was within the trial court's discretion to overrule the objection, and we discern no abuse of discretion in its decision to do so. Thus, the defense motions were not untimely, and when the trial was continued to November 2010, and the motions in limine were heard on a date past the assigned date for hearing them, there was no judicial misconduct.

Regarding their challenge to the trial court's decision to continue the trial, the record shows that the court required defense counsel to submit a declaration setting forth counsel's unavailability and showing that counsel was actually engaged in trial at that time. At the further hearing, the trial court accepted the evidence that defense counsel was engaged in a trial elsewhere. The court noted that the trial involved a five-year case. After considering the declaration of counsel, as well as the vacation schedule of plaintiffs' counsel, the court continued the trial to November 8, 2010. The need for a continuance was justified, and the trial court had previously continued the trial to accommodate plaintiffs' counsel. Moreover, the trial court granted a second request by plaintiffs' counsel for a short continuance of the trial to November 12, 2010. Thus, we discern no judicial bias in the court's treatment of either counsel.

7

## E. Plaintiffs' Motion in Limine

Plaintiffs fault the trial court for refusing to rule on their sole motion in limine. Plaintiffs cite to pages 502 through 914 of the clerk's transcript, more than 400 pages. This motion sought to suppress certain discovery that plaintiffs alleged was untimely produced. It was originally filed on November 2, 2009, prior to the original trial date. SAC Hospital opposed the motion, noting that it addressed numerous documents, which ostensibly had not been produced when plaintiffs had many opportunities following the continued trial and discovery cutoff dates to obtain them. The trial court questioned whether the motion was moot, given the fact that the trial and discovery cutoff dates had been continued. Given the number of items addressed in the motion, the trial court reserved ruling "because if something comes up and [the court believed it to be] prejudicial, [it] may keep it out." The court decided "to deal with that on an item-by-item basis."

As SAC Hospital point outs, plaintiffs offer no argument how the court's ruling constituted judicial misconduct or resulted in prejudice. Thus, we deem it waived. (*Cahill*, *supra*, 194 Cal.App.4th at p. 956.) Nonetheless, we conclude the court did not abuse its discretion in reserving ruling, nor did such decision amount to judicial misconduct.

## F. Preclusion of Evidence of Surveillance Cameras

Plaintiffs contend the trial court committed misconduct when it denied its prior ruling to allow them to elicit testimony about cameras in the hospital that captured any roving patrols around the time of the accident.

8

## 1. Further background facts

One of SAC Hospital's motions in limine sought to preclude references to surveillance cameras. During argument on the motion, plaintiffs asserted that SAC Hospital had cameras capable of having still photographs; however, Carol Hull, Director of Risk Management, determined there was no need to save any videos that may have depicted Mrs. Legardy's fall. They argued that the cameras are relevant to establish exactly where the fall occurred, how Mrs. Legardy was injured, the substance on the floor, and who assisted her. Plaintiffs asserted that spoliation of evidence had always been an issue.

In response, SAC Hospital argued the point of its motion in limine is that there were no cameras in the area where Mrs. Legardy fell; any electronic imaging was recycled every 30 days; and SAC Hospital had not received any notice prior to the 30 days to preserve any imaging. Plaintiffs replied that SAC Hospital knew where Mrs. Legardy fell but it was trying to say she fell somewhere else. Additionally, plaintiffs said the cameras are relevant as to "whether or not there's a roving patrol," because "[o]ne of their defenses is that there's a roving patrol in the hospital." Plaintiffs continued to argue that SAC Hospital intentionally destroyed any pictures of the fall.

The court noted that plaintiffs had no evidence of deliberate destruction. SAC Hospital commented the map indicated there were no cameras located in the area that could have captured Mrs. Legardy's fall. Furthermore, the hospital was not disputing that she fell, that there was a liquid on the floor, or that she hit her knee on the floor. The court ruled as follows: "I'll grant the motion with a caveat. I'll allow plaintiff to go into

9

the existence of these surveillance cameras with regard to the issue of roving patrols. The allegation will be that they had a policy of roving patrols. And I'll allow her to challenge whether they had a camera system and did they pick up any roving patrols on that day either sometime before the accident or after the accident. I think that's important because the issue of roving patrols can—most likely will be prejudicial to the plaintiff but prejudicial in an admissible way to the plaintiff, and I think they have to have an avenue to try and impeach for that. And if they know there's [*sic*] video cameras, of course, they say 'they erased everything so we can't show it.' I think that that makes it fair to both sides. [¶] I think the issue is obviously important to the defense. 'Look, our policy was to have people walk through there, and they inspected the hallways.' [¶] And her contention is 'You didn't have anybody, and did you have a video of them on that day?' [¶] Let it be explained why they didn't or if the cameras weren't there. Do you understand, counsel? [¶] . . . [¶] I'll allow you to go into it with regard to the issue of roving patrols only; [d]o you understand?" Other than roving patrols, plaintiffs were not allowed to pursue the issue of whether surveillance cameras captured anything else.

During the redirect examination of Gene Santilli, the facility director of SAC Hospital in 2006, plaintiffs' counsel asked him about the surveillance cameras and whether they would have captured images of the people who walked through the hallways. Counsel also asked whether he had received any request to save the videos from the time that Mrs. Legardy fell. Counsel further inquired into how long the tapes would last, how many days of video are saved before being recycled, and how difficult it

10

is to download a tape or a still picture. The court asked both counsel to approach the bench.

Noting that plaintiffs' counsel's questions exceeded cross-examination, the court inquired into the relevance of whether or not Mr. Santilli was able to take still pictures from the surveillance videos. Plaintiffs' counsel explained that because defense counsel had inquired into how SAC Hospital employees are trained to monitor the hallways, she believed it opened the door to inquire about the cameras. The court disagreed on the grounds that the previous testimony established the fact that SAC Hospital did not have anyone who patrolled the hallways. Plaintiffs' counsel argued that the video would show who was in the hallways, who monitored it, where Mrs. Legardy fell, who responded, and who was present. She added this was relevant to proving that SAC Hospital was not monitoring the hallways. The court replied there was no video, and thus, counsel was trying to present evidence of spoliation, i.e., that there were videos or pictures which SAC Hospital hid from plaintiffs. Following further discussion, the court told plaintiffs' counsel: "Whatever conspiracies you have [regarding spoliation of evidence] which may or may not be true are not relevant to what's going on in the trial right now. It's not relevant." Over further argument of plaintiffs' counsel, the trial court said: "We're done. You have made your record, and we'll go out and finish this witness, and we'll move away from what was clearly a violation of the motion in limine, and there was no basis to it. You may think there was a basis, but it was not based on the questions he asked. It had nothing to do with cameras. It had nothing to do with anybody who could spot these

11

things. It only had to do with whether there were people regularly walking through, and he said no. Let's move on."

Later during the trial, SAC Hospital requested that the jury be admonished regarding the surveillance cameras. Plaintiffs' counsel argued that because SAC Hospital brought up floor observation or maintenance programs or supervision of the floors, she was entitled to bring up the rebuttal evidence of the cameras. The court disagreed, finding that counsel had violated the court's prior order granting SAC Hospital's motion in limine. The court thus agreed to admonish the jury as follows: "'There is no evidence of surveillance cameras that would have captured imaging of the area where Ms. Legardy claims she fell or where the hospital claims she fell. Accordingly, you are instructed to disregard any and all questioning and testimony regarding surveillance cameras.'"

*2. Discussion*

Plaintiffs argue that the trial court completely disregarded its order regarding the motion in limine which dealt with the issue of surveillance cameras. According to plaintiffs, "if [SAC Hospital] asserted that there were roving patrols employees of the hospital that Plaintiff[s] could introduce evidence of the lack of tape evidence showing that there were no roving patrols the day of Plaintiff's fall." They further fault the court for not allowing them to state during opening statement that the hospital had 63 cameras. Plaintiffs maintain that the evidence "would have shown the [h]ospital violated [its] own procedures, that all of [its] employees were not trained; and that the hospital did not have a roving patrol monitoring the floors for spills." Thus, they contend the trial court erred in excluding relevant evidence. We disagree.

12

The trial court did not disregard its order. Plaintiffs were told that, other than roving patrols, they were not allowed to pursue the issue of whether surveillance cameras captured anything else. Witnesses testified there were no designated persons who patrolled the halls at certain times of the day looking for things such as spills. Rather, if someone noticed a spill, he or she would page one of the floaters, or people who would respond to calls, such as, "stat calls on beds, hazardous waste, furniture lifting, just basically helping out anybody in their needs." According to Mr. Santilli, all employees were responsible for keeping their eyes open for spills or other items on the floor. Because there was no evidence of roving patrols, it was improper for plaintiffs' counsel to question any witness about surveillance cameras. Even if the court did disregard its earlier ruling on a motion in limine, such rulings are tentative. The trial court retains the discretion to make a different ruling as the evidence unfolds. (*Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 608 ["A ruling on a pretrial motion in limine is necessarily tentative because subsequent evidentiary developments may change the context."].)

**G. Outrageous Comments Made by the Trial Court Before the Jury**

Plaintiffs assert they were prejudiced by the trial court's outrageous comments made before the jury. In support of their claim, plaintiffs cite to a discussion between the court and their counsel regarding their counsel's desire to recall Mr. Legardy to the stand. The discussion was outside the presence of the jury. They also reference an exchange between the court and plaintiffs' counsel, wherein the court reminded counsel to limit redirect examination to the scope of cross-examination by commenting, "Counsel[],

13

you're supposed to stick within his questions." Finally, plaintiffs complain that the court "would say things like, 'just testing you' to [their c]ounsel in front of the jury."[3]

Because the first discussion was outside the presence of the jury, there is no evidence of discourteous and disparaging remarks made before the jury. Nonetheless, plaintiffs also complain that the trial court refused to allow them to continue cross-examination of the witness Lauriston Kenneth Smith the next day and continually interrupted their counsel's cross-examination of Mr. Smith reminding counsel that it was "five minutes to four" and "five after." According to our review of the record, plaintiffs' counsel was seeking to impeach Mr. Smith with his deposition testimony on the issues of (1) when he retired, (2) whether he was "going" to the cafeteria or "walking towards" the cafeteria. Both of these areas are irrelevant. Mr. Smith was no longer employed by SAC Hospital, and was living in Georgia. SAC Hospital wanted to introduce his deposition testimony into evidence; however, plaintiffs refused. Thus, Mr. Smith had to fly to California to testify at trial and the court was determined to not require him to stay another day when plaintiffs' counsel was questioning him beyond the scope of direct examination or on irrelevant issues. More importantly, plaintiffs' counsel ended her cross-examination of Mr. Smith, stating, "I have nothing further." She did not seek to

---

[3] "[THE COURT:] We're right at 4:00. This is beyond the scope of cross-examination.
"Who do you have for tomorrow?
"[PLAINTIFFS' COUNSEL]: Tomorrow we have nobody, your Honor. We're dark.
"THE COURT: That's right. We won't be here tomorrow. Just testing you.
"[PLAINTIFFS' COUNSEL]: Thank you, your Honor. Did I pass?"

14

have him brought back the next day, nor did she state the need to continue questioning him. We discern no misconduct or erroneous evidentiary rulings on the part of the trial court.

The second comment was made to remind plaintiffs' counsel that her redirect examination was exceeding the scope of cross-examination. Because plaintiffs do not argue that their counsel was not exceeding the scope of cross-examination, there is no prejudice. Finally, regarding the last comment, when considered in the context of when it was made, i.e., at the end of the day, and plaintiffs' counsel's response, we conclude it was not discourteous or disparaging. Rather, as SAC Hospital notes, the comment appears to be "nothing more than a lighthearted exchange between the trial judge and [plaintiffs'] counsel."

### H.  CACI No. 1011

Plaintiffs contend the court used SAC Hospital's "jury instruction and judgment on special verdict that was not in compliance with *Ortega v. Kmart [Corp.]* (2001) 26 Cal.4th 1200, 1205 [(*Ortega*)], and CACI 1011, over repeated objections." (Capitalization omitted.) They argue the court rejected their requested instructions and "blindsided" them with the ones used. However, they supply little pertinent legal argument and no analysis. As such, their claim may be deem waived. (*Cahill*, *supra*, 194 Cal.App.4th at p. 956.) Even if their arguments have not been waived, plaintiffs cannot prevail.

As SAC Hospital notes, our state's highest court addressed the scope of an owner's duty to visitors regarding dangerous conditions of the property. (*Ortega*, *supra*,

15

26 Cal.4th at p. 1205-1207.) "It is well established in California that although a store owner is not an insurer of the safety of its patrons, the owner does owe them a duty to exercise reasonable care in keeping the premises reasonably safe. [Citation.]" (*Id*. at p. 1205.) "Because the owner is not the insurer of the visitor's personal safety [citation], the owner's actual or constructive knowledge of the dangerous condition is a key to establishing its liability. Although the owner's lack of knowledge is not a defense, '[t]o impose liability for injuries suffered by an invitee due to [a] defective condition of the premises, the owner or occupier "must have either actual or constructive knowledge of the dangerous condition or have been able by the exercise of ordinary care to discover the condition, which if known to him, he should realize as involving an unreasonable risk to invitees on his premises. . . ."' [Citations.]" (*Id*. at p. 1206.)

"To exercise a degree of care that is commensurate with the risks involved, the owner must make reasonable inspections of the portions of the premises open to customers. [Citations.] . . . An injured plaintiff has the burden of showing that the owner had notice of the defect in sufficient time to correct it, but failed to take reasonable steps to do so. [Citation.] One way to carry that burden is to raise an inference that the hazardous condition existed long enough for the owner to have discovered it, if an owner exercising reasonable care would have learned of it. [Citations.]" (*Howard v. Omni Hotels Management Corp.* (2012) 203 Cal.App.4th 403, 431, fn. omitted.) "It remains a question of fact for the jury whether, under all the circumstances, the defective condition existed long enough so that it would have been discovered and remedied by an owner in the exercise of reasonable care." (*Ortega*, *supra*, 26 Cal.4th at p. 1213.)

16

The jury was instructed with CACI 1011, as follows:  "'In determining whether [SAC] Hospital should have known of the condition that created the risk of harm, you must decide whether, under all circumstances, the condition was of such a nature and existed long enough that [SAC] Hospital had sufficient time to discover it, and using reasonable care:  1, Repair the condition; or 2, Protect against harm from the condition; or 3, Adequately warn of the condition.  [¶]  [SAC] Hospital must make reasonable inspections of the property to discover unsafe conditions.  If an inspection was not made within a reasonable time before the accident, this may show that the condition existed long enough so that an owner using reasonable care could have discovered it.  [¶]  What constitutes a reasonable inspection must be determined from all the evidence.'"[4] Additionally, the jury received Special Instruction Number 1 which provided: "'Defendant [SAC] Hospital is not an insurer of the safety of visitors, although it does owe them a duty of reasonable care in keeping its premises reasonably safe.'" (Capitalization omitted.)

Under current California law, the jury was properly instructed.

## I.  Exclusion of Expert Testimony on Damages

In their final argument, plaintiffs contend "[t]he Court refused expert opinions on the subject of damages even though Plaintiff[s] complied in full with *Bonds v. Roy* (1999)

---

**4**  With the exception of the last paragraph, this instruction tracts the language approved by the Judicial Council for CACI 1011.  (See Judicial Council of Cal. Civ. Jury Instns. (2012) CACI No. 1011.)

17

20 Cal.4th 140, 147,[5] and over repeated objections." Other than citing to the 10 pages in the reporters transcript, plaintiffs offer no further discussion or analysis. As we have previously noted, it is not our job to develop plaintiffs' argument for them. Their failure to do so allows this court to treat the contention as waived. (*Cahill*, *supra*, 194 Cal.App.4th at p. 956.)

Notwithstanding the above, SAC Hospital provided this court with the context of plaintiffs' argument and a response. Plaintiffs sought to elicit testimony on the reasonableness of the medical expenses via Michael Alexander Wiener, M.D. SAC Hospital objected on the grounds that the doctor had offered no such opinion in his deposition and plaintiffs failed to inform SAC Hospital that Dr. Wiener would provide such an opinion. (*Kennemur v. State of California* (1982) 133 Cal.App.3d 907 [expert witness's testimony is limited to opinions rendered at the time of his or her deposition].) Following a discussion between the court and counsel, outside the presence of the jury, the trial court sustained SAC Hospital's objection under *Kennemur*. The trial court's ruling was proper. Moreover, as SAC Hospital points out, the excluded opinion testimony concerning damages is moot because plaintiffs did not prevail on the issue of liability at the trial level or on appeal.

---

[5] Plaintiffs cite the Supreme Court's observation that "it is difficult to distinguish cases in which a party inaccurately describes the general substance of an expert's expected testimony from cases in which a party wholly fails to disclose an expert. [Citations.]" (*Bonds v. Roy*, *supra*, 20 Cal.4th at p. 147.)

## III. DISPOSITION

The judgment is affirmed.  Each party shall bear its own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


<u>     HOLLENHORST     </u>

Acting P. J.

We concur:

<u>     MCKINSTER     </u>

J.

<u>     CODRINGTON     </u>

J.

19